## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHANTHAY KIASONESENA** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **NO. 17-3160** |
| | : | |
| **NANCY A. BERRYHILL,** | : | |
| **ACTING COMMISSIONER OF** | : | |
| **SOCIAL SECURITY** | : | |
| **Defendant.** | : | |

**KEARNEY, J.** **July 6, 2018**

## MEMORANDUM

Chanthay Kiasonesena asks we review the Social Security Commissioner's denial of his Disability Insurance Benefits and Supplemental Security Income disability benefits. Administrative Law Judge ("ALJ") Jennifer M. Lash evaluated and weighed the evidence adduced from several physicians and neurologists and, in detailed findings, denied Mr. Kiasonesena's appeal of the Commissioner's ruling. After the Appeals Council also denied his appeal, Mr. Kiasonesena properly sought our review of ALJ Lash's decision. Mr. Kiasonesena alleges ALJ Lash failed to reasonably evaluate all of his impairments, rejected medical opinion evidence without reasonable explanation, rejected lay testimony without reasonable explanation, and erred by finding him not disabled based on a vocational rule despite the presence of a non-exertional impairment. The Honorable Carol Sandra Moore Wells recommended remand for further proceedings. We agree with Judge Moore Wells and grant Mr. Kiasonesena's petition for review and remand to the Commissioner in the accompanying Order.

## I.  Background

Mr. Kiasonesena is a fifty-six year old man who graduated from high school in Laos and speaks and reads limited English.[1]  Mr. Kiasonesena worked as a machine operator from 1998-2010 for eight hours a day for five days a week.[2]  From 2011-2013, he worked as a cook for five hours a day for five days a week.[3]  Mr. Kiasonesena filed for disability benefits on October 21, 2013 and for supplemental security income on November 4, 2013.[4]  In his application, Mr. Kiasonesena alleges disabilities due to diabetes, high blood pressure, high cholesterol and kidney disease.[5]  On February 6, 2014, the Social Security Administration denied his application.[6]  Mr. Kiasonesena requested an administrative hearing on February 18, 2014.[7]

### A.  Evidence adduced before Administrative Law Judge Jennifer M. Lash.

At the January 13, 2016 hearing before ALJ Lash, Mr. Kiasonesena testified about his alleged disabilities.[8]  He testified he worked as a machine operator and a cook.[9]  He testified his medical problems began affecting his work in 2013 when he moved to Philadelphia.[10]  Mr. Kiasonesena testified he fell down a flight of stairs triggering his memory problems.[11]  He testified he experiences issues with his heart, kidney, and physical body.[12]  Mr. Kiasonesena's physician diagnosed him with diabetes when he moved to Philadelphia.[13]  Mr. Kiasonesena's physician also treats him for depression.[14]  Mr. Kiasonesena testified his memory loss and depression limit his ability to work.[15]  He testified his last employer fired him as a cook because he could not remember the recipes.[16]

Now unemployed, Mr. Kiasonesena watches his girlfriend's daughter, takes her to the bus stop, and completes household chores.[17]  He naps regularly for one to three hours a day.[18]  Although Mr. Kiasonesena testified he does not drive, he takes public transportation.[19]  Mr.

2

Kiasonesena characterizes himself as forgetful.[20]  As an example, he testified he once turned on the fire, forgot to turn it off, and burned his face.[21]

Mr. Kiasonesena's girlfriend, Vong Donsanouphith, testified she gives Mr. Kiasonesena his medications and schedules his appointments.[22]  She testified Mr. Kiasonesena's memory problems began in 2014.[23]  Ms. Donsanouphith testified his memory problems affected his work as a cook because he could not remember the recipes.[24]

Vocation Expert Eric D. Dennison testified at the hearing.[25]  ALJ Lash asked Mr. Dennison to describe Mr. Kiasonesena's past work.[26]  Mr. Dennison testified Mr. Kiasonesena performed past relevant work as a cook, which is skilled and requires a medium exertional level.[27]  Mr. Dennison testified Mr. Kiasonesena also worked as a machine feeder, which is unskilled and requires a medium exertional level.[28]  He testified his summary matched the definitions in the *Dictionary of Occupational Titles.*[29]

### B. Administrative Law Judge Jennifer M. Lash's decision.

Applying the established five-step analysis, ALJ Lash concluded Mr. Kiasonesena has not been disabled within the meaning of the Social Security Act from October 14, 2013 through the date of her decision.[30]  ALJ Lash reviewed records from several of Mr. Kiasonesena's treating physicians.[31]  After carefully considering the record, ALJ Lash found at step one, Mr. Kiasonesena has not engaged in substantial gainful activity since October 14, 2013, the alleged onset date of his disability.[32] ALJ Lash found at step two, Mr. Kiasonesena suffered from several severe impairments: diabetes mellitus with neuropathy, status post minor cerebrovascular accident, and affective disorder because they impose significant restrictions on Mr. Kiasonesena's ability to perform basic work activities.[33]  ALJ Lash did not consider Mr. Kiasonesena's chronic kidney disease, renal colic with stone, or hypertension severe because the

3

record did not support more than minimal work-related limitation from these conditions.[34]  ALJ did not consider Mr. Kiasonesena's hyperlipidemia, allergic rhinitis, chronic sinusitis, tinea pedis, or diarrhea severe because the record did not document any work-related limitations from these conditions.[35]  At step three, ALJ Lash determined Mr. Kiasonesena's impairments do not meet or medical equal the severity of one the listed impairments.[36]

At step four, ALJ Lash found Mr. Kiasonesena cannot perform his past relevant work as a cook because it is classified as skilled medium work or as a machine feeder because it is classified as unskilled medium work.[37] At step five, ALJ Lash found Mr. Kiasonesena had the residual functional capacity ("RFC") to perform the full range of light work from the alleged onset date of the disability through February 19, 2014.[38]  As of February 20, 2014, Mr. Kiasonesena has the RFC for light work, but is limited to performing unskilled work secondary to a moderate limitation in the ability to maintain concentration, persistence, or pace.[39] Considering Mr. Kiasonesena's age, education, work experience, and RFC, ALJ Lash found jobs existing in significant numbers in the national economy Mr. Kiasonesena can perform.[40]

ALJ Lash assigned little weight to the opinion of Aimee Luo, D.O. indicating temporary disability from December 30, 2014 to December 31, 2015 based on memory and neurological changes, diabetes mellitus, hypertension and chronic kidney disease.[41]  ALJ Lash found Dr. Luo failed to outline any specific work-related limitations.[42]  ALJ Lash stated Dr. Luo's opinion "is a conclusory statement on an issue reversed to the Commissioner of Social Security," and not supported by the objective medical evidence of record or the minimal clinical signs shown in her other treatment records.[43]

ALJ Lash assigned significant weight to the Disability Determination Service medical consultant's opinion, Candelaria Legaspi, M.D.[44]  After reviewing the physical evidence, Dr.

4

Legaspi noted benign clinical findings of no motor deficit, normal neurological examination, normal sensation to monofilament testing, normal electrocardiogram, normal gait, normal computer tomography scan of the brain, normal laboratory values except for an elevated A1 c, and a reduction in creatinine level.[45] ALJ Lash also acknowledged the opinion of Richard W. Williams, Ph.D., who found no mental medically determinable impairment.[46] ALJ Lash found Mr. Kiasonesena's testimony regarding the frequency, duration, location, and intensity of his symptoms not supported by the medical evidence.[47] The Appeals Council affirmed ALJ Lash's decision and denied further review.[48]

## C. The Honorable Sandra Moore Wells' Report and Recommendation.

Judge Moore Wells reviewed the record and recommended we grant Mr. Kiasonesena's Request for Review and remand for further proceedings.[49] Judge Moore Wells found substantial evidence supported ALJ Lash's findings with respect to Mr. Kiasonesena's chronic renal disorder and migraine headaches.[50] Judge Moore Wells also found ALJ Lash reasonably explained her treatment of medical opinion evidence.[51] Judge Moore Wells found ALJ Lash articulated valid reasons for discounting Mr. Kiasonesena and Ms. Donsanouphith's testimony.[52]

Judge Moore Wells found ALJ Lash erred in finding Mr. Kiasonesena not disabled.[53] Judge Moore Wells found ALJ Lash's decision to limit Mr. Kiasonesena to unskilled work did not accurately reflect his inability to maintain concentration, persistence, or pace.[54] She recommended remanding so ALJ Lash could modify her RFC assessment of Mr. Kiasonesena to accurately reflect his inability to maintain concentration, persistence, or pace.

## II.    Analysis

Mr. Kiasonesena timely filed a request for review in this Court. He argues ALJ Lash erred in: (1) not reasonably evaluating his chronic renal disorder and migraine headaches; (2) rejecting medical opinion evidence without reasonable explanation; (3) rejecting lay testimony

without reasonable explanation; and, (4) finding him not disabled based on a vocational rule despite the presence of non-exertional impairment.[55]

Nancy A. Berryhill, Acting Commissioner of Social Security, objects to Judge Moore Wells' Report and Recommendation. She argues Judge Moore Wells erred in determining ALJ Lash failed to account for Mr. Kiasonesena's moderate limitation in the area of concentration, persistence, or pace in the RFC assessment.[56] Commissioner Berryhill objects, first on a procedural grounds arguing Judge Moore Wells proposes remand on an issue Mr. Kiasonesena never raised and the Commissioner did not have an opportunity to address the issue before the court issued its ruling.[57] The Commissioner argues Mr. Kiasonesena's failure to raise the issue constitutes a waiver.[58] The Commissioner, second, argues ALJ Lash properly accounted for Mr. Kiasonesena's moderate limitation in concentration, persistence, or pace in her RFC assessment.[59]

Our review of ALJ Lash's decision is deferential and her findings of fact are conclusive if supported by substantial evidence.[60] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[61] Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." [62] To determine whether substantial evidence supports a factual finding, we review the whole record.[63] We are bound by the ALJ's factual findings if they are supported by substantial evidence, even if we would have decided the matter differently.[64]

The ALJ must determine whether the claimant is disabled when examining a challenge to the Commissioner's initial decision denying benefits. Under Title II of the Social Security Act ("Act"), a person who has contributed to the program and who suffers from a physical or mental disability is afforded insurance benefits.[65] Under Title XVI of the Act, a disabled person may

6

also be entitled to supplemental security income.[66] A disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[67] A claimant is only disabled if their impairments are severe to the point it makes their previous work impossible to do or precludes any other kind of gainful work available in the national economy.[68]

The Commissioner applies a five-step evaluation to determine if a claimant is disabled.[69] If the Commissioner finds disability or non-disability at any step during the analysis, the Commissioner will end the analysis.[70] Under step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity.[71] If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two and is required to determine whether the claimant is suffering from a severe impairment or combination of impairments.[72] Under step three, if the claimant's impairments are severe, the Commissioner compares the impairments to a list of impairments presumed severe enough to preclude gainful employment.[73] If claimant's impairments or its equivalent matches a listed impairment, the claimant is presumed disabled.[74] If the claimant's impairments do not match impairments on the list, the Commissioner proceeds to step four, where the Commissioner determines the claimant's RFC.[75] A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[76] In step five, if the claimant is unable to return to past work, the Commissioner must prove "there are other jobs existing in significant numbers in the national economy which claimant can perform, consistent with his medical impairments, age, education, past work experience, and [RFC]."[77]

7

## A. ALJ Lash relied upon substantial evidence to decline Mr. Kiasonesena's claim of disability for chronic renal failure and migraine headaches.

Mr. Kiasonesena alleges ALJ Lash erred by not reasonably evaluating all of his impairments. Mr. Kiasonesena alleges ALJ Lash did not properly assess his chronic kidney disease. Mr. Kiasonesena also alleges ALJ Lash did not address his migraine disorder. He claims these errors are not harmless and not addressing them affected his RFC.

### a. ALJ Lash properly considered Mr. Kiasonesena's chronic renal failure.

Mr. Kiasonesena alleges ALJ Lash did not properly assess his chronic kidney disease. He claims ALJ Lash failed to provide a reasonable explanation for concluding his chronic renal failure did not affect his ability to do basic work activities. Mr. Kiasonesena alleges ALJ Lash's statements about his chronic renal failure were conclusory.

Substantial evidence supports ALJ Lash's finding of non-severe chronic renal failure.[78] A treating physician's opinion is entitled to controlling weight when it is supported by acceptable clinical and laboratory diagnostic techniques and is consistent with other evidence in the record.[79] An impairment is severe only if it significantly limits a claimant's ability to do basic work activities.[80] Basic work activities are the abilities and aptitudes necessary for most jobs, including walking, standing, lifting, pushing, pulling, reaching, handling, understanding, carrying out, remembering simple instructions, responding appropriately to supervision, and dealing with changes in a routine work setting.[81]

ALJ Lash provided an adequate explanation for finding Kiasonesena's chronic kidney disease not severe. ALJ Lash acknowledged Mr. Kiasonesena's former primary care physician, Nghia Phan, M.D. diagnosed him with chronic renal failure because of his elevated creatinine levels.[82] Dr. Phan then found dehydration to be a relevant factor in Mr. Kiasonesena's elevated levels.[83] Dr. Joel F. Glickman, M.D. determined Mr. Kiasonesena's low renal function and low

8

blood pressure were related.[84]  The elevated creatinine levels decreased and returned to normal limits when Mr. Kiasonesena discontinued his blood pressure medicine.[85]

ALJ Lash properly determined "the record does not substantiate more than minimal work-related limitations from this condition."[86]  Mr. Kiasonesena does not pinpoint evidence ignored by ALJ Lash, but simply asks us to reweigh the evidence, which is not permissible.[87] We deny this basis for review.

### b. ALJ Lash did not err in failing to identify Mr. Kiasonesena's migraine headaches as a severe impairment.

Mr. Kiasonesena alleges ALJ Lash failed to consider his migraine headaches.  He claims ALJ Lash did not include the migraine disorder in her assessment of his RFC.  He claims his migraine disorder is not accommodated in ALJ Lash's assessment of his RFC.

ALJ Lash must consider all of the evidence presented and give some reason for discounting the evidence she rejects.[88]  However, the "mere existence of a diagnosis" is insufficient to establish a disability.[89]  "There must be functional limitations which prevent the performance of any substantial gainful activity."[90]

Neurologist Ayesha Mahmood, M.D. recorded Mr. Kiasonesena's migraine headaches on three occasions.[91]  Dr. Mahmood prescribed Depakote and Mr. Kiasonesena reported his headaches were controlled.[92]  Although ALJ Lash did not mention migraine headaches, she referred to Dr. Mahmood's reports throughout her decision.[93]  ALJ Lash erred by not acknowledging the headaches because she must consider all evidence and explain her treatment of it.

But her error does not warrant remand.  Dr. Mahmood's reports and Mr. Kiasonesena's testimony do not support a finding of a disability because they do not claim the migraines produced a functional limitation to his work.  Mr. Kiasonesena does not argue remand would

9

produce a different result. Remand is not required where the outcome would be the same.[94] We deny this basis for review.

## B. ALJ Lash reasonably explained her treatment of medical opinion evidence and relied upon substantial evidence to decline Mr. Kiasonesena's claim.

Mr. Kiasonesena alleges ALJ Lash erred by rejecting medical opinion evidence. He alleges ALJ Lash rejected the opinion of his treating physician, Aimee Luo, D.O., and gave great weight to the Disability Determination Service medical consultant's opinion, Candelaria Legaspi, M.D.

The ALJ must determine the weight to assign to each medical opinion when the record contains conflicting opinions from medical providers.[95] While treating physicians' reports should be accorded great weight, they are entitled to controlling weight only where their conclusions are well supported by medical evidence, and not inconsistent with other substantial evidence.[96] Opinions of State agency consultants warrant significant consideration because of their "expertise in what constitutes a disability for social security purposes."[97] The ALJ must explain on the record his or her reasons for disregarding a treating source's opinion.[98]

### a. ALJ Lash properly considered Dr. Luo's medical opinion.

Mr. Kiasonesena alleges ALJ Lash erred by failing to reasonably explain why she rejected opinion evidence from his treating physician, Dr. Luo. On February 23, 2015, Dr. Luo completed Section II of an "Employability Assessment Form" for the Pennsylvania Department of Public Welfare.[99] She found Mr. Kiasonesena's temporary disabled from December 20, 2014 through December 31, 2015 due to his memory loss, neurological changes, chronic renal failure, diabetes, and hypertension.[100]

ALJ Lash properly considered Dr. Luo's opinion and gave it little weight.[101] ALJ Lash explained Dr. Luo's form "fails to outline any specific work-related limitations, is a conclusory

10

statement on an issue reserved to the Commissioner of Social Security... and is not supported by the objective medical evidence of record or the minimal clinical signs shown in her and other treatment records."[102] ALJ Lash noted Dr. Luo prepared the form for the Pennsylvania Department of Public Welfare, and the Social Security regulations state, "if a decision by another agency were to be made that a claimant is disabled, or is unable to work, that decision is not binding on the Social Security Administration."[103] A decision by another agency is based on its own rules and not based on social security law.[104] Dr. Luo based her opinion on different rules than ALJ Lash used to determine whether Mr. Kiasonesena is disabled.

ALJ Lash provided an adequate explanation for giving Dr. Luo's opinion little weight and her according little weight to Dr. Luo's opinion is supported with substantial evidence. We deny this basis for review.

### b. ALJ properly considered Dr. Legaspi's medical opinion.

Mr. Kiasonesena alleges ALJ Lash erred by giving Dr. Legaspi's medical opinion significant weight. He claims Dr. Legaspi's opinion should be given little weight because she is a non-examining source. Mr. Kiasonesena also claims Dr. Legaspi's opinions are weak because she reached her conclusions on January 2, 2014 and important evidence about his memory loss did not enter the record until later.[105]

Dr. Legaspi reviewed Mr. Kiasonesena's medical records and found him capable of the "full range of light work consisting of lifting and/or carrying ten pounds frequently and 20 pounds occasionally, standing and/or walking six out of eight hours, sitting six hours, and no pushing and pulling limitations beyond the level noted for lifting and carrying."[106] Based on this evidence, ALJ Lash formulated an RFC assessment finding Mr. Kiasonesena capable of the full range of light work from the alleged onset date of disability through February 19, 2014.[107] ALJ

11

Lash explained Mr. Kiasonesena's memory loss began after February 19, 2014, and she made an effort to accommodate functional limitation associated with his memory loss in her RFC assessment.[108] As of February 20, 2014, she found him capable of light work, but limited it to unskilled work secondary to a moderate limitation in the ability to maintain concentration, persistence, or pace.[109]

ALJ did not credit only Dr. Legaspi's opinion in forming her RFC assessment. She also considered Richard W. Williams, Ph.D.'s February 5, 2014 opinion stating Mr. Kiasonesena does not have a mental medically determinable impairment; Meredith Spindler, M.D.'s opinion stating, "MRI Brain, MRI Head, and MRI C-spine only notable for slight SVID [small vessel ischemic disease];" and, Ayesha Mahmood, M.D.'s opinion stating Mr. Kiasonesena had mildly impaired remote memory and normal attention span and concentration on exams.[110] ALJ Lash properly gave Dr. Legaspi's opinion significant consideration as a State agent consultant and ALJ Lash explained and supported her treatment of his medical opinion evidence and others with substantial evidence. We deny this basis of review.

## C. Substantial evidence supports ALJ Lash's assessment of Mr. Kiasonesena's subjective pain complaints.

Mr. Kiasonesena alleges ALJ Lash erred by rejecting his testimony. ALJ Lash determined Mr. Kiasonesena's statements "concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible for the reasons explained in this decision."[111] Mr. Kiasonesena claims insufficient reasons support ALJ Lash's assessment of his credibility.[112]

A reviewing court should ordinarily defer to the ALJ's credibility determination, who has the opportunity to assess a claimant's credibility during an administrative hearing.[113] The ALJ's credibility determination must also be supported by the record.[114] A two-step analysis is required when assessing the credibility of a claimant's subjective pain complaints.[115] First, the

claimant must provide objective medical evidence showing a medical impairment could reasonably be expected to produce the pain or other symptom.[116] Second, the ALJ evaluates the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent they limit his ability to do basic work activities.[117] The ALJ must explain the reasons for rejecting a claimant's testimony.[118]

ALJ Lash followed the two-step process and found Mr. Kiasonesena's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible.[119] Although Mr. Kiasonesena claimed to suffer memory problems, his neurologic examinations showed he could spell the word "world" backwards and recall three out of three words after five minutes.[120] He had largely intact cognitive function, normal fund of knowledge, and normal language.[121] ALJ Lash found Mr. Kiasonesena's ability to care for himself, perform housework, watch his girlfriend's daughter, prepare simple meals, watch television, take public transportation, and shop with his girlfriend were inconsistent with his claim of complete disability.[122] ALJ Lash credited Mr. Kiasonesena's subjective complaints regarding his memory loss by including in her RFC assessment a limitation to unskilled work.[123]

After reviewing the record, ALJ Lash articulated valid reasons for discounting Mr. Kiasonesena's credibility. We uphold ALJ Lash's credibility finding and deny this basis of review.

### D. ALJ Lash properly considered Ms. Donsanouphith's testimony.

Mr. Kiasonesena alleges ALJ Lash did not explain her rejection of Ms. Donsonouphith's testimony. He claims no reason exists to discount Ms. Donsanouphith's testimony.

ALJ Lash may use evidence from nonmedical sources, including family and friends at her discretion.[124] As a matter of law, the ALJ is not required to assign specific weight to the testimony of a lay witness, but can use it to make credibility determinations.[125]

ALJ Lash considered Ms. Donsanouphith's testimony and credited it in part. ALJ Lash considered the memory problems described by Ms. Donsanouphith.[126] ALJ Lash accommodated the limitation in her RFC assessment by limiting Mr. Kiasonesena to unskilled light work.[127] To the extent ALJ Lash rejected Ms. Donsanouphith's testimony, her reasons were supported by the record. We deny this basis of review.

## E. ALJ Lash improperly found Mr. Kiasonesena not disabled based on a vocational rule.

Mr. Kiasonesena alleges ALJ Lash erred in finding him not disabled based on a vocational rule.[128] Mr. Kiasonesena alleges he has significant impairments in the ability to understand, carry out, and remember simple instructions.[129] Commissioner Berryhill argues ALJ Lash correctly determined Mr. Kiasonesena did not have a disability based on the Medical-Vocational Guidelines ("Grids") because she limited him to unskilled work.[130] Judge Moore Wells found ALJ Lash's RFC assessment did not adequately account for Mr. Kiasonesena's moderate difficulty with concentration, persistence, or pace and recommended remand.[131] She recommended remand to permit ALJ Lash to modify her RFC assessment to accurately reflect Mr. Kiasonesena's inability to maintain concertation, persistence. and pace.[132] Commissioner Berryhill objected arguing (1) Judge Moore Wells addressed an issue Mr. Kiasonesena never raised; and, (2) ALJ Lash correctly accounted for Mr. Kiasonesena's limitation in concentration, pace, or persistence in her RFC assessment.[133]

14

### a. Mr. Kiasonesena properly raised the deficiency of ALJ Lash's RFC assessment in his brief.

Commissioner Berryhill argues Mr. Kiasonesena did not raise the issue of ALJ Lash's RFC assessment with regard to his moderate limitation in concentration, persistence, or pace before Judge Moore Wells.[134] Commissioner Berryhill claims his failure to raise this argument waived this basis for objection.[135]

"It is well established that failure to raise an issue in the district court constitutes a waiver of the argument."[136] A "passing reference to an issue in a brief" will not suffice to bring it on appeal.[137] Social Security proceedings are inquisitorial rather than adversarial and it is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.[138] Because of the different nature of Social Security proceedings, "claimants who exhaust administrative remedies need not also exhaust *issues* in a request for review by the Appeals Council in order to preserve judicial review of those issues."[139]

Commissioner Berryhill argues Judge Moore Wells recommended a remand on an issue never raised because Mr. Kiasonesena never challenged the deficiency of ALJ Lash's RFC assessment in not accounting for a moderate limitation in concentration, persistence, or pace. Mr. Kiasonesena raised this issue in his Brief and Statement of Issues in Support of Request for Review. Mr. Kiasonesena alleges ALJ Lash's RFC assessment fails to equate "moderate limitation in the ability to maintain concentration, persistence or pace" with the ability to "understand, carry out, and remember simple instructions" on a sustained basis.[140] Mr. Kiasonesena did not waive this issue. Even if he did not raise the issue, Mr. Kiasonesena did not waive it and judicial review of this issue is preserved.

**b. ALJ Lash's RFC assessment improperly relied solely on the grids.**

ALJ Lash found Mr. Kiasonesena has the RFC for "light work, but is limited to performing unskilled work secondary to a moderate limitation in the ability to maintain concentration, persistence, or pace."[141] Judge Moore Wells recommended remand to permit ALJ Lash to modify her RFC assessment to reflect Mr. Kiasonesena's inability to maintain concentration, persistence, or pace, or to explain why no limitation is warranted.[142] Commissioner Berryhill claims ALJ Lash fully accounted for Mr. Kiasonesena's mental functional limitations by restricting the RFC to jobs requiring unskilled work and linking this restriction as secondary to a moderate limitation in the ability to maintain concentration, persistence, or pace.

In step five of the disability inquiry, the Commissioner has the burden of determining if the claimant is capable of work existing in the national economy.[143] "The Commissioner cannot determine that nonexertional impairments do not significantly erode occupational base under medical-vocational guidelines ("grids") without taking additional vocational evidence establishing that fact."[144] The grids take "administrative notice ... of the numbers of unskilled jobs that exist throughout the national economy at the various function levels," including the light exertional level.[145] If the Commissioner wishes to rely on a Social Security Rule ("SSR") as a replacement for a vocational expert, "it must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base."[146] The Commissioner cannot determine Mr. Kiasonesena's nonexertional impairments do not significantly erode his occupational base under grids without either (1) taking additional vocational evidence; or, (2) providing notice to Mr. Kiasonesena of her intention to take official notice of this fact and providing an opportunity to counter the

conclusion.[147] If the Commissioner relies on the grids as a substitute for individualized testimony of a vocational expert, notice should be given so Mr. Kiasonesena could call his own expert.[148]

In *Meyler v. Comm'r of Soc. Sec.*, the ALJ did not explain why the claimant's non-exertional impairments did not prevent her from meeting the demands of unskilled work.[149] The ALJ instead relied upon SSR 85–15 and SSR 83–10 without calling a vocational expert, and without providing notice to the claimant so she could call her own vocational expert.[150] Our court of appeals found "because the ALJ provided no notice… we give close scrutiny to his reliance on an SSR at step five."[151] Our court of appeals held the ALJ did not support her decision with substantial evidence and remanded for further explanation by the ALJ about how the claimants specific limitations affected her ability to perform unskilled work.[152]

Similar to *Meyler,* ALJ Lash relied on the grids and SSR 85–15 in determining Mr. Kiasonesena "had the residual functional capacity to perform the full range of light work from the alleged onset date of disability through February 19, 2014."[153] ALJ Lash found as of February 20, 2014, Mr. Kiasonesena has the RFC for light work, but is limited to unskilled working secondary to a moderate limitation in the ability to maintain concentration, pace, or persistence.[154] ALJ Lash only found Mr. Kiasonesena to have non-exertional limitations beginning on February 20, 2014.[155] Based on SSR 85-15, ALJ Lash found Mr. Kiasonesena "is able to understand, remember, and carry out simple instructions; to interact appropriately to supervisors and coworkers, and to respond appropriately to usual work situations, and is able to deal with changes in a routine work setting."[156] She then found Mr. Kiasonesena capable of performing "competitive, remunerative, unskilled work."[157] ALJ Lash relied on the grids and SSR 85-15 without taking vocational testimony as to Mr. Kiasonesena's ability to work in the

national market.[158]   ALJ Lash also failed to provide notice to Mr. Kiasonesena about her intention to rely exclusively on the grids.[159]

As our court of appeals instructs in *Meyler*, we must closely scrutinize ALJ Lash's reliance on an SSR at step five.[160]   ALJ Lash fails to explain why Mr. Kiasonesena's nonexertional limitation do not limit the range of occupations available to him.[161]   She states Mr. Kiasonesena is able to "understand, remember, and carry out simple instructions," but does not explain how his limitation in concentration, pace, or persistence affects his ability to carry out simple tasks.[162]   ALJ Lash's RFC assessment is not supported with substantial evidence because she fails to explain how the Mr. Kiasonesena's specific limitations affect his ability to perform unskilled work. We grant Mr. Kiasonesena's request for review and remand for ALJ Lash to modify her RFC assessment to accurately reflect Mr. Kiasonesena's non-exertional impairments.

Judge Moore Wells found ALJ Lash did not adequately account for Mr. Kiasonesena's moderate difficulty with concentration, persistence, or pace.[163]   Judge Moore Wells relies on cases involving an ALJ's hypothetical question to a vocational expert which did not accurately convey all of the claimant's impairments.[164]   In *Ramirez v. Barnhart*, an ALJ relied on a vocational expert, and the court held the ALJ's hypothetical question posed to the vocational expert did not adequately capture and recite all of the claimants mental impairments and his moderate limitation in concentration, persistence, or pace.[165]   Similarly, in *McPherson v. Colvin*, we found the ALJ's hypothetical question posed to the vocational expert failed to adequately convey the claimant's mental deficiencies with sufficient specificity.[166]   As mentioned above, ALJ Lash improperly relied solely on the grids and not vocational expert testimony when determining Mr. Kiasonesena's RFC. We remand for ALJ Lash to modify her RFC assessment to accurately reflect Mr. Kiasonesena's non-exertional limitation and if she calls on a vocational

18

expert, she must convey all of the Mr. Kiasonesena's impairments which include his moderate difficulty with concentration, persistence, or pace.

## III. Conclusion

In the accompanying Order, we grant Mr. Kiasonesena's Petition for Review. ALJ Lash reviewed extensive medical evidence spanning several years in determining whether Mr. Kiasonesena's diabetes, high blood pressure, high cholesterol, kidney disease, and memory problems were disabling. ALJ Lash acknowledged Mr. Kiasonesena's limitations but found him capable of performing unskilled work secondary to a moderate limitation in his ability to maintain concentration, persistence, or pace. Our review today is not based on whether we would arrive at the same conclusion as ALJ Lash. We only determine whether ALJ Lash's findings are based on substantial evidence from the record after considering the weight assigned to the adduced evidence.

ALJ Lash provided adequate reasons supporting her assignment of weight to the opinion of Dr. Legaspi and her credibility determinations with respect to Mr. Kiasonesena's subjective complaints. ALJ Lash's RFC assessment is not supported with substantial evidence because she fails to explain how Mr. Kiasonesena's specific limitations affect his ability to perform unskilled work. She relied solely on the grids and SSR 85-15 and failed to provide Mr. Kiasonesena with notice of her intent not to call a vocational expert to testify to his disabilities. We grant Mr. Kiasonesena's Petition for Review and remand for ALJ Lash to modify her RFC assessment to accurately reflect Mr. Kiasonesena's nonexertional impairments.

---

[1] ECF Doc. No. 7, Social Security Administrative Record ("R.") at 57, 149.

[2] R. 154.

[3] *Id.*

19

[4] R. 105-106.

[5] R. 154.

[6] R. 107.

[7] R. 117.

[8] R. 68.

[9] R. 59-64.

[10] R. 68.

[11] *Id.*

[12] *Id.*

[13] R. 69.

[14] *Id.*

[15] R. 68-71.

[16] *Id.*

[17] R. 71-73.

[18] R. 72-74.

[19] R. 56-57.

[20] R. 75.

[21] *Id.*

[22] R. 79.

[23] R. 77.

[24] R. 78.

[25] R. 84

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] R. 11-12.

[31] R. 13-15.

[32] R. 13.

[33] R. 13-14.

[34] R. 14.

[35] *Id.*

[36] R. 15. *See* 20 C.F.R Part 404, Subpart P, Appendix 1.

[37] R. 23.

[38] R. 18.

[39] R. 18.

[40] R. 23-24.

[41] R. 21.

[42] *Id.*

[43] *Id.*

[44] R. 22.

[45] R. 22, 88-95, 96-104.

[46] R. 22.

[47] *Id.*

[48] R. 1-5.

[49] ECF Doc. No. 15.

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] ECF Doc. No. 11.

[56] ECF Doc. No. 16.

[57] *Id.*

[58] *Id.*

[59] *Id.*

[60] *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)).

[61] *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

[62] *Id.* (quoting *Rutherford*, 399 F.3d at 552) (internal quotes omitted).

[63] *Id.* (citing *Schaudeck v. Comm'r,* 181 F.3d 429, 431 (3d Cir. 1999)).

[64] *Trinh v. Astrue*, 900 F. Supp. 2d 515, 518 (E.D. Pa. 2012) (citing *Fargnolia v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001)).

[65] 42 U.S.C. § 423(a)(1)(D).

[66] *Id.* § 1381 *et seq.*

[67] *Id.* § 423(d)(1)(A); § 1382c(a)(3)(A).

[68] *Id.* §§ 423(d)(2)(A), 1282c(a)(3)(B); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

[69] *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004).

[70] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[71] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (mandating finding of non-disability if claimant is engaged in substantial gainful activity).

[72] *Id.* §§ 404.1520(a)(4)(ii), 416(a)(4)(ii) (mandating finding of non-disability if claimant's impairments are not severe).

[73] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[74] *Id.*

[75] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[76] *Fargnoli v. Halter*, 247 F.3d 34, 40 (3d Cir. 2001).

[77] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). *Plummer*, 186 F.3d at 428.

[78] R. 14.

[79] *Miller v. Berryhill,* No. 16-521, 2017 WL 3648494, at *3 (E.D. Pa. Aug. 22, 2017) (citing 20 C.F.R. § 416.927(c)(2)).

[80] 20 C.F.R. §§404.1521(a), 416.921(a).

[81] *Id.* §§ 404.1521(a)-(b), 416.921(a)-(b).

[82] R. 14, 281-82.

[83] R. 281-82.

[84] R. 440.

[85] R. 439-460.

[86] R. 14.

[87] *Rutherford*, 399 F.3d at 552.

[88] *Plummer*, 186 F.3d at 429.

[89] *Keck v. Colvin*, 12-02188, 2014 WL 4793933, at *21 (M.D. Pa. Sept. 24, 2014) (citing *Talmage v. Astrue*, No. 09-1065, 2010 WL 680461, at *7 (W.D. Pa. Feb. 24, 2010)).

[90] *Id.*

[91] R. 473, 481, 488.

[92] R. 473, 487.

[93] R. 13, 15-18, 20-21, 23.

[94] *Rutherford*, 399 F.3d at 553.

[95] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009).

[96] *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citing *Rocco v. Heckler,* 826 F.2d 1348, 1350 (3d Cir. 1987)).

[97] *Packard v. Astrue*, No. 11-7323, 2012 WL 4717890, at \*4 (E.D. Pa. Oct. 4, 2012) (citing *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2012)).

[98] *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986).

[99] R. 359- 362.

[100] R. 359-360.

[101] R. 21.

[102] *Id.*

[103] R. 22. *See* 20 C.F.R. §§ 404.1504, 416.904.

[104] 20 C.F.R. §§ 404.1504, 416.904.

[105] ECF Doc. No. 11.

[106] R. 88-95.

[107] R. 18-23.

[108] *Id.*

[109] R. 18.

[110] R. 16, 20, 23.

[111] R. 19.

[112] ECF Doc. No. 11.

[113] *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003).

24

[114] *Id.*

[115] 20 C.F.R. §§ 404.1529, 416.929.

[116] *Id.* §§ 404.1529(b), 416.929(b).

[117] *Id.* §§ 404.1529(c)(3), 416.929(c)(3).

[118] *Sykes v. Barnhart*, 228 F.3d 259, 266 (3d Cir. 2000).

[119] R. 19.

[120] R. 20-21.

[121] R. 21, 288-290, 429, 465, 297, 311, 315, 325, 340, 349.

[122] R. 17, 160-167.

[123] R. 18.

[124] 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4).

[125] *Id.* §§ 404.1513(d)(4), 416.913(d)(4).

[126] R. 19, 21.

[127] R. 18, 24.

[128] R. 24 (*see* Medical-Vocational Rule 202.14; SSR 85-15 (S.S.A. 1985)).

[129] ECF Doc. No. 11.

[130] ECF. Doc. No. 16.

[131] ECF Doc. No. 15.

[132] *Id.*

[133] ECF Doc. No. 16.

[134] *Id.*

[135] *Id.*

[136] *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1298 (3d Cir. 1991) (*see Toyota Indus. Trucks v. Citizens Nat'l Bank,* 611 F.2d 465, 470 (3d Cir.1979); *see also Lugar v. Texaco, Inc.,* 755 F.2d 53, 57 n. 2 (3d Cir.1985)).

[137] *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1066 (3d Cir. 1991).

[138] *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000).

[139] *Id.* (emphasis added).

[140] ECF Doc. No. 11, p. 17.

[141] R. 18.

[142] ECF Doc. No. 15.

[143] 20 C.F.R. § 404.1520(a)(4)(v).

[144] *Allen v. Barnhart*, 417 F.3d 396, 401 (3d Cir. 2005) (citing *Sykes v. Apfel*, 228 F.3d 259, 266 (3d Cir. 2000).

[145] 20 C.F.R pt. 303, subpart P, app. 2, § 200.00(b).

[146] *Allen*, 417 F.3d at 407.

[147] *Apfel*, 228 F.3d at 261.

[148] *Allen*, 417 F. at 408.

[149] *Meyler v. Comm'r of Soc. Sec.*, 238 F. App'x 884, 890 (3d Cir. 2007).

[150] *Id.*

[151] *Id.*

[152] *Id.* at 890-91.

[153] R. 18.

[154] *Id.*

[155] R. 24.

[156] *Id.*

[157] *Id.*

[158] *See Apfel*, 228 F.3d at 266.

[159] ECF Doc. No. 11.

[160] *Meyler,* 238 Fed.App'x at 890.

[161] R. 24.

[162] *Id.*

[163] ECF Doc. No. 15.

[164] *See Ramirez*, 372 F.3d at 554; *see also McPherson v. Colvin*, No. 16-1469, 2016 WL 5404471, at *7-9 (E.D. Pa. Sept. 28, 2016) (holding hypothetical questions posed to vocational experts must convey all of social security disability claimant's impairments, and the limitations they caused).

[165] *Id.* at 554.

[166] *McPherson*, 2016 WL 5404471, at *7.